IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

T. KENT BALDWIN and LAURA A. }
POWELL, as guardians of the }
person and property of ANNE }
D. LOVE, } CIVIL ACTION NO.
 } 03-AR-1908-M
 Plaintiffs, }
 }
v. }
 }
MCCAIN & SASSER, P.C. and LEE }
T. OZMINT, }
 }
 Defendants. }

**MEMORANDUM OPINION**

The court has before it a motion for a new trial filed pursuant to Rule 59, F.R.Civ.P., by plaintiffs, T. Kent Baldwin and Laura A. Powell, as the guardians of Anne D. Love ("Love"), an incompetent person. Plaintiffs, on behalf of Love, sued defendants, McCain & Sasser, P.C. and Lee T. Ozmint, who are a law firm and one of its lawyers. The original complaint invoked the Alabama Legal Services Liability Act ("ALSLA"), Ala. Code §§ 6-5-570 *et seq.*, claiming that defendants failed to meet the standard of care required of them vis-á-vis Love. Over defendants' strenuous objection, the court allowed plaintiffs to amend their complaint, alternatively or cumulatively to add claims under Alabama tort theories of fraud, breach of fiduciary obligation, conspiracy, etc. All of plaintiffs' claims, whether under ALSLA or not, arose out of defendants' provision of legal services to two of Love's care providers, one of whom was purportedly the attorney-in-

fact for Love under a power-of-attorney executed by Love.[1]

Without here undertaking to restate the pertinent evidence adduced during a week-long trial, this court now finds that plaintiffs failed to make out a *prima facie* case to support their contention that defendants were Love's lawyers. The evidence on that issue could not reasonably support a jury's finding that defendants had an attorney-client relationship with Love. It was in anticipation of this forensic problem that plaintiffs amended to add purportedly garden variety tort claims.

From the inception of the case, defendants have insisted that they never undertook, gratuitously or otherwise, to provide legal services to Love; and on that basis, they have always contended that they owed no duty to Love, whether under the ALSLA or under any other theory of law. As already stated, it was for this reason that plaintiffs added purported claims under tort theories that, according to plaintiffs, do not depend upon the existence of an attorney-client relationship, in the event ALSLA liability should be found to depend upon such a relationship. Of course, plaintiffs continued to claim, and at trial attempted to prove, that an attorney-client relationship between defendants and Love did, in fact, exist.

At the conclusion of plaintiffs' evidence, and again at the

---

[1] There is some question as to whether Love had the capacity ot execute the power-of-attorney due to her Alzheimers disease.

conclusion of all of the evidence, defendants filed motions for judgment as a matter of law pursuant to Rule 50(a), F.R.Civ.P.  The court took the said motions under advisement, reserving any ruling upon them, and submitted the case to the jury, which, after due deliberation, returned a verdict in favor of defendants, whereupon the court entered judgment for defendants and found that defendants' Rule 50(a) motions had been rendered moot by the jury verdict.

The main contention in plaintiffs' Rule 59 motion is that the court erroneously instructed the jury that the ALSLA is the only vehicle upon which plaintiffs could proceed against defendants.  This is the position that defendants had taken from the beginning, **except** that defendants had added the contention, with which the court then did not agree, that plaintiffs could not invoke ALSLA because ALSLA is only available to a person who has a client relationship with the defendant attorney.  In other words, defendants have always contended that plaintiffs are caught by a catch-22 from which they could not escape by the expedient of appending claims which, according to defendants, would be subsumed by ALSLA, that remains the exclusive remedy for entities injured by lawyers acting as lawyers.

It was not until the court was conducting the charge conference just before undertaking to instruct the jury that it became convinced that the ALSLA does, in fact, eliminate the

3

possibility of a person's pursuing a claim against a lawyer outside of ALSLA **if** the claim arises out of the lawyer's performance of legal services.  In other words, ALSLA requires all plaintiffs who sue a lawyer to frame their claims in terms of the lawyer's alleged failure to meet the ALSLA required standard of care.  If this court were reading ALSLA without help or hindrance from Alabama's appellate courts, the court would conclude, as it erroneously did just before charging for jury, that a non-client can proceed just as a client can against a lawyer under ALSLA as his exclusive remedy.  On its face, ALSLA allows **all** claims against lawyers that arise out of their acts as lawyers to proceed if the lawyer's conduct does not meet the ordinary standard of care and causes plaintiff injury.  The statutory language, using the conventions of good grammar, cannot be construed to suggest that ALSLA is limited to claims brought by **clients**.[2]  From reading the pertinent

---

[2]It is the intent of the legislature to establish a comprehensive system governing **all** legal actions against legal service providers.  The legislature finds that in order to protect the rights and welfare of all Alabama citizens and in order to provide for the fair, orderly and efficient administration of legal actions against legal service providers in the courts of this state, this article provides a **complete** and **unified** approach to legal actions against legal service providers and creates **a new and single form of action and cause of action exclusively governing the liability of legal service providers** known as a legal service liability action and provides for the time in which a legal service liability action may be brought and maintained is required.

(emphasis supplied).

Ala. Code § 6-5-570.

provisions of ALSLA as applied by the Supreme Court of Alabama in *Voyager Guaranty Insurance Co., Inc. v. Brown*, 631 So. 2d 848 (Ala. 1993), this court erroneously deduced that a lawyer who commits fraud, and whose fraud proximately causes injury to a non-client third-party, must be judged on the basis of whether his conduct meets the ALSLA standard of care, and not under any general fraud analysis. Unfortunately, this court was overwhelmed by the *Voyager dictum*, in which the Supreme Court of Alabama voiced its

* * * * *

**Any action** against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. **A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to be litigant in a court in the State of Alabama now or in the future.**

(emphasis supplied).

Ala. Code § 6-5-572(1).

* * * * *

**There shall be only one form and cause of action against legal service providers in courts in the State of Alabama** and it shall be known as the legal service liability action . . . .

(emphasis supplied).

Ala. Code § 6-5-573.

recognition of the principle that fraud by a lawyer is examined only under the ALSLA microscope, but in which that court then found that the essential elements of fraud were not present and therefore never actually reached the precise question of whether a non-client can sue a lawyer for fraud by invoking ALSLA.  Reading *Voyager* expansively, and reading ALSLA literally, this court erroneously charged the jury under ALSLA, without instructing the jury that plaintiffs could only proceed under ALSLA if they had proven by a preponderance of the evidence that Love was, in fact, defendants' client at the time defendants did what plaintiffs were complaining about, or in other words, that defendants gratuitously or otherwise undertook to represent Love while representing Love's caregivers.

After the jury charge had been delivered, plaintiffs were given the opportunity to state their exceptions, if any, to the charge.  Counsel for plaintiffs thereupon said for the record:

> Only to the extent, as I said before the charge was given, Your Honor, to the extent that you were correct on the law with regard to the liability act [ALSLA], then I have no objection.  If, however, that is incorrect, we object to the failure to charge on the underlying offenses.

It is clear from this enigmatic expression that plaintiffs were not excepting to the court's specific, if erroneous, instructions that ALSLA was plaintiffs' exclusive remedy and that ALSLA had subsumed plaintiffs' other claims.  By being equivocal, plaintiffs did not preserve for post-judgment motion, or for appeal, their present contention that the court erroneously instructed on ALSLA.

The court can fully understand why, when the case was going to the jury, plaintiffs wanted to have their cake and eat it too, and did not seriously complain about the court's charge, because the charge, as given, did not require plaintiffs to prove what the court now finds to have been impossible, namely, that Love was defendants' client at the time defendants were performing legal services for Love's aggressively acquisitive and ambitious caregivers.

As it turns out, this court was correct to the extent it found ALSLA to provide the exclusive remedy against lawyers while operating as lawyers, but this court was wrong when it further instructed the jury that a **non-client**, such as Love, can also invoke the ALSLA against a lawyer whose negligence, or fraud, or breach of fiduciary obligation, or conspiratorial conduct, if it breaches the standard of care and harms the **non-client**, can provide a vehicle for the **non-client's** obtaining a judgment against the lawyer.  Upon a more careful reading of the opinions of Alabama's appellate courts, it now appears that Alabama recognizes a special, if awesome, immunity from tort liability for Alabama's lawyers for injuries they cause to **non-clients**, no matter how egregious the conduct may be, **if the conduct was a part of the performance of legal services.**  There is no way this court can avoid the narrow interpretation of ALSLA that the Supreme Court of Alabama has given it.  A recent Alabama case that instructs this court in a binding

way contains the following pregnant language:

> No case before this action has specifically dealt with the question whether an action filed against an attorney by a nonclient and arising out of that attorney's rendition of legal services to a third party was subject to the ALSLA. Moreover, language in *Cunningham* [*Cunningham v. Langston, Frazer, Sweet & Freese, P.A.*, 727 So. 2d 800 (Ala. 1999)] can reasonably be read to suggest the view that the **ALSLA applies only to proceedings commenced against the legal-service provider by one who had received legal services, that is, one to whom legal services had been rendered.**

(emphasis supplied).

\* \* \* \* \*

> In all of the cases cited in *Cunningham*, except *Voyager*, [*Voyager Guar. Ins. Co. v. Brown*, 631 So. 2d 848 (Ala. 1993)] the plaintiff had been a client of the defendant attorney. In *Voyager*, the plaintiff was a lender relying on a legal opinion given by the defendant attorney.
>
> Under the allegations of Morrow's complaint, April and Irene, who were undisputedly not Gibson's clients, were not the recipients of his legal services, but actions he allegedly took while providing legal services for a third party profoundly affected them.

*Morrow v. Gibson*, 827 So. 2d 756 (Ala. 2002).

Clearing up, at least to this court's satisfaction, any enigma left by *Morrow v. Gibson*, a more recent decision of the Supreme Court says this about ALSLA:

> [W]e decline to change **the rule of law in this state that bars an action for legal malpractice against a lawyer by a plaintiff for whom the lawyer has not undertaken a duty, either by contract or gratuitously**. *Shows, supra*, [*Shows v. NCNB Nat'l Bank of North Caroline*, 585 So. 2d 880 (Ala. 1991)], and *Peterson, supra*, *Peterson v. Anderson*, 719 So. 2d 216 (Ala. Civ. App. 1997)].

\* \* \* \* \*

> Robinson also argues that his negligence claim against Benton falls outside the Legal Service Liability Act, § 6-5-570 *et seq*. Ala. Code 1975. However, the record shows that this issue was never raised before the trial court. Therefore, we cannot address this issue on appeal. "Our review is limited to the issues that were before the trial court–an issue raised on appeal must have first been presented to and ruled on by the trial court." *Norman v. Bozeman*, 605 So. 2d 1210, 1214 (Ala. 1992) (citation omitted). However, **we note that the Legal Service Liability Act encompasses all claims against attorneys into one action**. § 6-5-573, Ala. Code 1975; *Peterson, supra*. Further, Robinson's complaint specifically stated that "[t]his [was] a legal service liability action pursuant to *Ala. Code* § 6-5-570, *et seq*."

(emphasis supplied).

*Robinson v. Benton*, 842 So. 2d 631 (Ala. 2002).

Although admittedly *dictum*, the Supreme Court surely would not have noted "that the Legal Services Liability Act encompasses all claims against attorneys into one action" unless it recognizes a legislative intent to fashion, or itself is fashioning a catch-22 for non-clients who are harmed by the actions of lawyers while acting as lawyers. *Robinson* nails the lid on plaintiffs' coffin. A lawyer who drives a vehicle negligently and hurts somebody, even if he is on his way to taking a deposition, loses his immunity under ALSLA because he could just as easily have been going to lunch, but if he negligently or fraudulently fails to tear up a will as he promised, and thereby harms a "would-be" beneficiary who is not his client, he is, under ALSLA, completely immune from suit by the injured non-client.

This court does not care for the interpretation the Supreme

9

Court of Alabama has given ALSLA, but when this court exercises its diversity jurisdiction it is not privileged to question the wisdom of the legislature or of the courts of the state whose substantive law applies to the controversy.  If this court any longer harbored serious doubt about what ALSLA means in this context, the court would certify the question to the Supreme Court of Alabama.  Unfortunately for plaintiffs, the Supreme Court has expressed itself in a way that this court now feels it understands.

From the very beginning, defendants pressed upon the court this strange statutory Alabama lawyer-protection doctrine.  They are still insisting upon it in defense of plaintiffs' Rule 59 motion.  Defendants have finally gotten the court's attention.  What they have always said is exactly what the Alabama Legislature and/or the Supreme Court of Alabama intended to accomplish, no matter how unfair it may seem to a non-client who is the victim of tortious conduct committed while a lawyer is delivering legal services to another.

Now that the court has been convinced, not by plaintiffs, but by defendants, that it was wrong when it broadened the scope of ALSLA, what are the consequences for this case?  Rule 61, F.R.Civ.P., recognizes that error without injury is not the kind of error that requires rectification.  In the instant case, if anybody benefitted from the court's mistake, it was the plaintiffs.  The court sent plaintiffs' case to the jury when it should not have.

Instead, the court should have granted defendants' Rule 50(a) motion.  Why?  Because there was no substantial evidence upon which a reasonable jury could have found that defendants were Love's lawyers, either for a fee, or gratuitously.  Even if defendants fell below the standard of care as claimed by plaintiffs' lawyer-expert, defendants owed no duty to Love under ALSLA, because according to the Supreme Court of Alabama, such a duty depends upon the existence of an attorney-client relationship that did not exist here.  A lawyer cannot be found to have undertaken a representation by accident and without understanding what he is undertaking.  It is true that a lawyer's professional obligation not simultaneously to represent parties who have opposing interests, especially without disclosing the conflict, breaches the standard of care. But, the fact is that ALSLA was not here available for making such a claim, because Love was never defendants' client.  Therefore, plaintiffs never had an avenue for obtaining relief under Alabama law.  Alabama's catch-22 was firmly in place when defendants performed their legal services.  The court agrees with plaintiffs that their expert witness made a good argument for defendants' having failed to meet the requisite standard of care.  If they knowingly participated in the nefarious actions initiated by their clients, and virtually admitted by their clients, defendants fell below the standard of care they owed those clients.  But, again, **Love** was never defendants' client, and the Supreme Court of Alabama

has convinced this court that Love could not sue defendants who were indisputably acting as lawyers when they did or failed to do what plaintiffs undertook to prove.

The court's first error was in allowing plaintiffs to amend their complaint. Compounding that error, the court failed to grant defendants' Rule 50(a) motion, but neither of the court's errors injured plaintiffs. Instead, they gave plaintiffs a chance to argue with persuasive force to the jury that defendants fell short as lawyers and caused damage to Love. Apparently the jury was not convinced. The jury should have never been given the opportunity to turn plaintiffs down.

There is another reason why the court's instructions to the jury, if erroneous, constituted error without injury, and why Rule 61 requires the court to overlook it. The way the issues were presented to the jury, the jury was permitted to find ALSLA liability in favor of plaintiffs if it found fraud, or a conflict of interest, etc., by defendants, any of which torts could be found to be a breach of the standard of care described by plaintiffs' expert witness. When the jury necessarily found that plaintiffs had failed to prove an ALSLA case, the jury was, as a matter of fact and law, rejecting the very tort claims that plaintiffs belatedly argue should have been submitted to the jury.

Defendants' Rule 50(a) motion should have been granted for another reason. Plaintiffs failed to meet their burden of proving

12

by a preponderance of the evidence that Love sustained actual damage as a result of defendants' alleged misconduct. In order to recover damages, not only must proximate cause be shown, but the damages must be reasonably quantified. The figures plaintiffs put on the blackboard were pure speculation and were not logically deducible from the evidence. It was impossible to ascertain from the evidence what, if any, out-of-pocket loss Love sustained. The court did charge the jury that it could not speculate. Whether the absence of any evidence of traceable loss played a part in the jury's decision to award nothing to plaintiffs is just as speculative as was plaintiffs' evidence of damage.

Based on the foregoing, plaintiffs' Rule 59 motion will be denied by separate order.

DONE this 20th day of January, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE